UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,

                     Plaintiff,

        -against-

SUBAYE, INC. and JAMES T. CRANE,

                  Defendants.
-------------------------------------------------------------x

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  9-18-14
```

13 Civ. 3114 (PKC)

MEMORANDUM
AND ORDER

CASTEL, U.S.D.J.

      The United States Securities and Exchange Commission ("SEC") and defendant James T. Crane have reached a proposed settlement to resolve the SEC's action for twelve violations of the Securities and Exchange Act of 1934 ("Exchange Act"), rules promulgated thereunder, and the Sarbanes-Oxley Act of 2002 ("Sarbanes-Oxley").[1] The settlement contemplates the entry of permanent injunctions against Mr. Crane, the imposition of a $150,000 penalty, and the entry of an order barring Crane from serving as a director or officer of a public company. The parties have submitted to the Court for decision the length of the officer and director bar. For the purposes of the determination, the SEC and the defendant agree that the Court should accept the allegations of the SEC's complaint to be true. (Consent ¶ 5, Dkt. No. 39-1) The SEC seeks a lifetime ban. Crane seeks a ban of five years starting from the date of his resignation as CFO of Subaye in March 2011. For the reasons set forth below, the Court will impose a lifetime ban against Crane and approve the proposed consent decree.

---

[1] Familiarity with the facts set forth in this Court's Memorandum and Order of Feb. 4, 2014 is assumed. S.E.C. v. Subaye, Inc., 13-cv-3114 (PKC), 2014 WL 448414 (S.D.N.Y. Feb. 4, 2014). All capitalized terms and abbreviations have the same meaning here as they had there.

LEGAL STANDARD

Section 21(d)(2) of the Exchange Act provides that in a civil enforcement action brought by the SEC:

> the court may prohibit, conditionally or unconditionally, and permanently or for such period of time as it shall determine, any person who violated section 78j(b) of this title or the rules or regulations thereunder from acting as an officer or director of any issuer that has a class of securities registered pursuant to section 78*l* of this title or that is required to file reports pursuant to section 78*o*(d) of this title if the person's conduct demonstrates unfitness to serve as an officer or director of any such issuer.

15 U.S.C. § 78u(d)(2).  In SEC v. Patel, 61 F.3d 137, 141 (2d Cir. 1995), the Second Circuit identified six non-exclusive factors that were "useful in making the unfitness assessment":

> (1) the egregiousness of the underlying securities law violation; (2) the defendant's repeat offender status; (3) the defendant's role or position when he engaged in the fraud; (4) the defendant's degree of scienter; (5) the defendant's economic stake in the violation; and (6) the likelihood that misconduct will recur.

Id. (citing Jayne W. Barnard, When Is a Corporate Executive "Substantially Unfit to Serve"?, 70 N.C. L. Rev. 1489, 1492–93 (1992)).

In SEC v. Bankosky, 716 F.3d 45, 48 (2d Cir. 2013) the Second Circuit confirmed that the Patel factors remained applicable after Congress's 2002 amendment of section 21(d)(2), which replaced the phrase "substantial unfitness" with the word "unfitness."  The court reasoned that the amendment, "by lowering the threshold of misconduct required to impose the director and officer bar, did not undermine the usefulness of the Patel factors, which indicate where evidence of unfitness might be found in a defendant's misconduct."  Id.  The court further explained that "the Patel factors are neither mandatory nor exclusive; a district court may determine that some of those factors are inapplicable in a particular case and it may take other relevant factors into account as it exercises its 'substantial discretion' in deciding whether to impose the bar and, if so, the duration, so long as any bar imposed is accompanied with some

indication of the factual support for each factor that is relied upon." Id. at 48-49 (citing Patel at 141).

Because a lifetime bar constitutes a "loss of livelihood and the stigma attached to permanent exclusion from the corporate suite," the Second Circuit has cautioned that a district court imposing such a ban must either recognize past violations or "articulate the factual basis for a finding of the likelihood of recurrence." Patel, 61 F.3d at 142.

DISCUSSION

A.   A Lifetime Ban Under Section 21(d)(2) Is Appropriate

The parties stipulated in the consent judgment that, solely for the purposes of the parties' request for this Court's determination of the length of an order barring Crane from serving as an officer or director of a public company, the allegations of the complaint shall be accepted as true by the Court.  (Consent ¶ 5, Dkt. No. 39-1)

Applying the Patel factors to the facts of this case, this Court concludes that a lifetime bar is appropriate.  First, Crane's misconduct was egregious.  He drafted and signed numerous SEC filings that contained substantial misrepresentations of Subaye's business and financial condition, reporting a robust cloud computing business, substantial assets, millions of dollars of revenues, thousands of customers, and over 1,400 employees.  In reality, the company had little to no technological infrastructure, $200,000 in cash, no verifiable revenues or customers, and no employees.  Second, Crane's role in the fraud was substantial: as the CFO of the company, Crane was primarily responsible for ensuring the accuracy of the SEC filings he drafted and signed, and for coordinating audits of the company.  With respect to Crane's economic stake in the violation, this factor is neutral: the SEC's motion for entry of a judgment

contains no disgorgement request because it concedes that it "is unable conclusively to establish, through economic analysis, a disgorgement figure related to the claimed misconduct."  (Dkt. No. 39 at 5)

The remaining <u>Patel</u> factors—the defendant's repeat offender status, the defendant's degree of scienter, and the likelihood that the misconduct will recur—weigh heavily in favor of imposing a lifetime bar.  In an action unrelated to Crane's work at Subaye, on January 19, 2011, the PCAOB filed an action against Crane and his audit firm for failing to cooperate with a PCAOB inspection and for failure to file an annual report and pay an annual fee.  The action was settled at the time of filing, and the PCAOB issued an order on January 19, 2011 against Crane and his firm permanently revoking the registration of the firm and permanently barring him from being associated with a registered accounting firm or any issuer in an accountancy or financial management capacity.  The PCAOB specifically advised Crane that, pursuant to sections 105(c)(7)(A) and (B) of Sarbanes-Oxley, it was unlawful for him to be associated with a registered accounting firm.  The complaint (accepted as true) further alleges that in response to the ban, "Crane sought permission from the PCAOB to remain as Subaye's CFO for two more months.  The PCAOB denied this request."  (Compl. ¶ 41)  Crane also did not seek or receive the SEC's consent to continue as Subaye's CFO following the issuance of the PCAOB order.  (<u>Id.</u> ¶ 42)

Despite the foregoing circumstances, Crane remained as the CFO of Subaye from January 19, 2011 until March 10, 2011 in knowing disregard of the PCAOB ban.  During the period between the imposition of the ban and his resignation, Crane coordinated Subaye's review for the fiscal quarter ending December 31, 2010 with PwC HK and the Subaye Audit Committee;

he also drafted and signed filings submitted to the SEC, including an amended Form 8-K/A, and continued to represent the company before potential and existing investors.

Even though the specific conduct underlying the PCAOB sanctions is distinct from Crane's actions giving rise to the instant complaint, Crane's willful and flagrant disregard of the PCAOB's bar on his association with an issuer in an accountancy or financial management capacity is highly probative of his scienter and the likelihood of recurring misconduct. Based on Crane's past disregard for a legal bar on his practice of accounting, the Court concludes that there is a likelihood of recurrence of misconduct if Crane is not permanently barred. Accordingly, the Court will impose a lifetime bar against Crane's serving as a director or officer of a public company under section 21(d)(2).

B.  The Proposed Consent Order Will Be Approved

According to the Second Circuit,

the proper standard for reviewing a proposed consent judgment involving an enforcement agency requires that the district court determine whether the proposed consent decree is fair and reasonable, with the additional requirement that the public interest would not be disserved, in the event that the consent decree includes injunctive relief.  Absent a substantial basis in the record for concluding that the proposed consent decree does not meet these requirements, the district court is required to enter the order.

S.E.C. v. Citigroup Global Markets, Inc., 752 F.3d 285, 294 (2d Cir. 2014) (internal citation and quotations omitted).  A court reviewing a proposed consent decree for fairness and reasonableness "should, at a minimum, assess (1) the basic legality of the decree; (2) whether the terms of the decree, including its enforcement mechanism, are clear; (3) whether the consent decree reflects a resolution of the actual claims in the complaint; and (4) whether the consent

decree is tainted by improper collusion or corruption of some kind.  Id. at 294-95.  A district court must also establish that "a factual basis exists for the proposed decree."  Id. at 295.

"[W]hen a proposed consent decree contains injunctive relief, a district court must also consider the public interest in deciding whether to grant the injunction."  Id. at 296.  "A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. eBay, Inc. v. MercExchange, 547 U.S. 388, 391 (2006).

The parties' proposed consent order will be approved, as the parties have demonstrated that it is fair and reasonable.  For the reasons set forth in this Court's Memorandum and Order of February 4, 2014, there is a sufficient factual basis to support the entry of the proposed decree.  The decree is not procedurally improper; its terms, including its enforcement mechanism imposing a monetary penalty and injunctive relief, are clear; it reflects a resolution of the actual claims in the complaint relating to Crane's role in Subaye's fraud; and there is no indication in the record that the consent decree is tainted by improper collusion or corruption.  Further, the SEC has satisfied the requirements for granting injunctive relief under eBay, 547 U.S. at 391.  In light of Crane's status as a repeat offender and the previously discussed likelihood of recurrence of similar misconduct, the entry of permanent injunctions enjoining Crane from future violations of the provisions of the securities laws in the complaint and barring him from service as a director and officer of a public company is appropriate and would not disserve the public interest.

CONCLUSION

        For the foregoing reasons, the SEC's motion for entry of a judgment (Dkt. No. 39) is GRANTED.  The SEC is directed to submit a proposed judgment consistent with the foregoing within seven days.

        SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
       September 18, 2014

- 7 -